N. PATRICK CROOKS, J.
¶ 1. This is a review of *4 the circuit court's order granting Andrew M. Edler's motion to suppress statements he made during a custodial interrogation. We affirm the order of the circuit court. The statements Edler made after he invoked his right to counsel on April 20, 2011, must be suppressed. We remand to the circuit court for further proceedings consistent with this decision.
¶ 2. The court of appeals for District II certified the appeal pursuant to Wis. Stat. § (Rule) 809.61,[1] and we accepted the certification.[2]
¶ 3. To answer the certified questions, we must decide whether statements made by Edler on April 20 must be suppressed. This case requires an examination of two separate interactions between Edler and police, one involving Edler's unequivocal, unambiguous request for counsel while in custody on March 30, and the *5 other involving Edler's arrest and statement, "Can my attorney be present for this," on April 20. Accordingly, there are two potential bases for suppressing the April 20 statements.
¶ 4. We first examine Edler's March 30 invocation in light of the recent United States Supreme Court case Maryland v. Shatzer, 559 U.S. 98 (2010). In Shatzer the United States Supreme Court examined the presumption in Edwards v. Arizona, 451 U.S. 477 (1981), that after a suspect validly invokes the right to counsel, any subsequent waiver is invalid unless an attorney is present or the suspect "initiates further communication, exchanges, or conversations with the police." Edwards, 451 U.S. at 484-85. The Court in Shatzer explained that the Edwards presumption ends when the suspect has been outside police custody for 14 days. Shatzer, 559 U.S. at 110. Edler asks this court not to adopt Shatzer and instead interpret the Wisconsin Constitution to require a permanent bar on subsequent interrogation, or in the alternative, adopt a different test. We see no need in this case to interpret the Wisconsin Constitution to provide different protection than that provided by the United States Supreme Court's interpretation of the United States Constitution. We therefore adopt the rule created in Shatzer and, because 19 days had passed between when Edler was released from custody and when he was reinterrogated, hold that the March 30 invocation does not bar the interrogation on April 20.
¶ 5. A separate basis for suppressing the statements may exist even if the Edwards presumption no longer applied. If Edler's statement in the police car on April 20 was an unequivocal, unambiguous invocation of the right to counsel, the Edwards presumption would begin again. Given the circumstances surrounding the *6 invocation and the understanding that statements beginning with the word "can" often constitute a request, we hold that Edler's statement, "can my attorney be present for this," was a valid invocation of the right to counsel. The invocation re-starts the Edwards presumption, barring Edler's waiver of rights later that day because Edler was not provided with counsel and did not "initiate[] further communication, exchanges, or conversations with the police." After Edler's request for an attorney, police should have ceased questioning him. Because they did not, Edler's statements made after that request must be suppressed. His request was an unequivocal, unambiguous invocation of his right to counsel.
I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY
¶ 6. Edler was a seventeen-year-old firefighter for the Waldo Fire Department. He was able to respond to fires, but because he was on probationary status, he was limited to providing assistance such as moving hoses or other items for the firefighters. He became a suspect in two arsons committed in a nearby town due to his unusually quick response to those fires.
¶ 7. On March 30, 2011, Detective Gerald Urban met with Edler about an unrelated burglary. In an interrogation room at the sheriffs department, Urban read Edler his Miranda[3] rights, and Urban questioned Edler about the burglary. After Edler made incriminating statements about the burglary, Urban left the room, returning about eight minutes later. At that point, Urban began to ask Edler about the two arsons. Edler then unequivocally, unambiguously requested counsel, *7 stating: "From this point on, I'd like a lawyer here." Urban ceased questioning Edler. After Urban spent about two minutes explaining that if Edler was responsible for the fires he should stop that behavior, Edler was taken to the jail to await charging on the burglary.
¶ 8. From jail the next day, Edler requested to speak with Urban. Edler was transported from the jail to the sheriffs department, where an interview room had been set up. Urban met with Edler in the interview room, and Edler asked him about when he would be having his initial appearance. Urban asked Edler if he had anything to say about the arsons, to which Edler responded, "I honestly don't have anything to say about that." Urban did not ask any further questions about the arsons at that time.
¶ 9. Edler was charged with one count of burglary and one count of misdemeanor theft, made his initial appearance, and was released from custody on April 1, 2011. Edler was appointed a public defender for the burglary case on April 4, 2011.
¶ 10. On April 18, 2011, Urban talked with a friend of Edler. Edler's friend agreed to wear a covert wire to talk to Edler about his involvement in the two arsons. Edler made some damaging statements that were recorded on that day.
¶ 11. On April 20, 2011, Urban arrested Edler at Edler's home for the arson fires. Edler's father inquired about why Edler was being arrested, and Urban explained to Edler's father that he was being arrested for the fires. Edler's father then told Edler to be honest and cooperate with the detectives.
¶ 12. Edler was handcuffed and placed in the back seat of the detective's unmarked car. Urban sat next to Edler in the back seat. As they rode in the car, Urban encouraged Edler to follow his father's advice and *8 cooperate with the investigation. About five minutes into the drive, Edler stated, "Can my attorney be present for this," to which Urban responded, "Yes, he can." Edler did not make any incriminating statements during the ride.
¶ 13. When they arrived at the station, Edler was brought into an interrogation room.[4] Edler was having difficulty breathing and was crying when Urban entered the room. Urban explained the evidence they had against him and that Edler needed to come clean. Once again, he encouraged Edler to follow his father's advice. Then Urban stated, "I've got to play by the rules." He then gave Edler his Miranda warnings, and Edler waived those rights. Subsequently, Edler made incriminating statements to Urban.[5]
¶ 14. Edler was charged on April 22, 2011, with two counts of arson in violation of Wis. Stat. § 943.02(l)(a) and one count of possessing, manufacturing, or selling a Molotov cocktail in violation of Wis. Stat. § 943.06(2), each as a party to the crime under Wis. Stat. § 939.05.
¶ 15. Edler moved to suppress the statements he made after he waived his right to counsel on April 20 on the grounds that his Fifth and Sixth Amendment rights were violated.[6]
*9 ¶ 16. The Sheboygan County Circuit Court, the Honorable Terence T. Bourke presiding, granted the motion to suppress on the grounds that when in custody on April 20, Edler unequivocally, unambiguously invoked his right to counsel during the transportation to the sheriffs department, finding several facts: in the car on the way to the station Edler asked if his attorney could be present; Edler had an attorney in his burglary case but did not have one in the arson matters; and Edler had talked to Urban three weeks earlier and, at that time, Edler requested an attorney while being questioned about the arsons.
¶ 17. The circuit court held that Edler's Fifth Amendment right to counsel was violated when Urban interrogated Edler after Edler's unequivocal, unambiguous assertion of the right to counsel on April 20. The circuit court reasoned that under Miranda, after a request for counsel is made, it must be "scrupulously honored," and Edler's subsequent waiver of his Miranda rights at the station was therefore not valid. The circuit court quoted the holding in Edwards:
We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.
Edwards, 451 U.S. at 484-85.
¶ 18. The State appealed the order to suppress Edler's statements on the grounds that Edler's state *10 ment was a question about his rights and not itself an assertion of the rights. The court of appeals certified the appeal pursuant to Wis. Stat. § (Rule) 809.61.
II. STANDARD OF REVIEW
¶ 19. Whether this court will apply the rule in Shatzer or adopt a different rule under the Wisconsin Constitution is a question of law which we decide independently. Kenosha County Dep't of Human Servs. v. Jodie W., 2006 WI 93, ¶ 19, 293 Wis. 2d 530, 716 N.W2d 845.
¶ 20. Whether a defendant effectively invoked his Fifth Amendment right to counsel is a question of constitutional fact decided by this court in a two-part test. State v. Hambly, 2008 WI 10, ¶ 16, 307 Wis. 2d 98, 745 N.W.2d 48. First, this court upholds the circuit court's findings of facts unless clearly erroneous. Id. Second, this court independently applies constitutional principles to those facts, benefitting from the circuit court's interpretation. Id. The relevant facts are not in dispute; therefore, we must answer the question of whether the statements should be suppressed under either the United States or Wisconsin constitutions. State v. Knapp, 2005 WI 127, ¶ 20, 285 Wis. 2d 86, 700 N.W.2d 899.
III. ANALYSIS
¶ 21. We first decide whether this court will adopt the 14-day break-in-custody rule of Shatzer. If we adopt that rule and find that it was complied with here, then we must decide whether the statement by Edler in the back of the police car after he had been arrested was unequivocal or unambiguous.
*11 ¶ 22. The Fifth Amendment to the United States Constitution states in relevant part: "No person.. . shall be compelled in any criminal case to be a witness against himself." The Wisconsin Constitution contains a similar provision: "No person ... may be compelled in any criminal case to be a witness against himself or herself." Wis. Const, art. I, § 8(1).
¶ 23. The United States Supreme Court has interpreted and applied the Fifth Amendment protections as requiring a warning of certain constitutional rights when a defendant is subjected to custodial interrogation. Miranda created a rule to prevent law enforcement officers from violating the Fifth Amendment. While the rule has been and is still often called "prophylactic,"[7] the United States Supreme Court, Chief Justice Rehnquist writing for the majority, confirmed that it is a "constitutional rule" in Dickerson v. United States, 530 U.S. 428, 444 (2000). The rule requires that a suspect be apprised of certain constitutional rights, including the right to counsel, before custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 444-45 (1966). If the suspect is not given these warnings and makes incriminating statements, those incriminating statements must be suppressed. Id. at 444. If the *12 suspect chooses to invoke his or her right to counsel, that request must be "scrupulously honored," and "the interrogation must cease until an attorney is present." Id. at 474, 479.
¶ 24. The United States Supreme Court in Edwards further interpreted Miranda. The relevant facts from Edwards are as follows: Edwards was arrested, was given Miranda warnings, and was cooperating with police. 451 U.S. at 478-79. After some time passed, Edwards stated, "I want an attorney before making a deal." Id. at 479. The police did not question Edwards further on that day. Id. The next day, two different officers went to see Edwards in jail. Id. Edwards attempted to decline to talk to them but was told by a guard "that 'he had' to talk." Id. The guard brought Edwards to the officers, the officers then informed him of his Miranda rights, and he waived them. Id. The Supreme Court held that "an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Id. at 484-85. Thus, Edwards created a presumption of involuntariness of a waiver of Miranda rights made after a valid invocation of the right to counsel unless an attorney is provided or the defendant initiates further communication with police.
¶ 25. As we noted earlier, the United States Supreme Court recently interpreted the Edwards presumption in Shatzer and determined that the presumption of Edwards ends after a 14-day break in custody. The Shatzer court examined whether a break in custody ended the Edwards presumption. Shatzer, 559 U.S. at 100. Shatzer was incarcerated at a correctional facility *13 serving a sentence on another offense. Id. at 100-01. A detective met with Shatzer at the institution, gave Shatzer his Miranda warnings, and Shatzer waived those rights. Id. at 101. There was some confusion about what the detective was there for, but when Shatzer realized what the detective wanted to talk about, Shatzer declined to speak without an attorney, and Shatzer was released back into general population at the prison.[8] Id. Two years and six months later, a different detective went to the correctional institution to which Shatzer had been transferred. Id. The detective gave Shatzer his Miranda warnings, and Shatzer provided a written waiver of those rights. Id. Shatzer subsequently made incriminating statements during the interview and also agreed to a polygraph examination. Id. at 101-02. Five days later, Shatzer again waived his Miranda rights, was given a polygraph examination which he failed, and made additional incriminating statements. Id. at 102. Shatzer then moved to suppress his statements as a violation of the Fifth Amendment on the grounds that Edwards barred the use of his statements because he had invoked his right to counsel two and a half years earlier. Id.
¶ 26. The Supreme Court disagreed with Shatzer and held that the Fifth Amendment was not violated. The Court described the reasons behind Edwards as "conserving judicial resources," "preserving] the integrity of an accused's choice to communicate with police only through counsel," and "preventing police from *14 badgering a defendant into waiving his previously asserted Miranda rights." Id. at 106 (citations omitted). Explaining the problems with a permanent bar to future questioning and the establishment of prophylactic rules,[9] the court decided that the Edwards presumption ends after there is a 14-day break in custody. Id. at 110. It reasoned, "[t]hat provides plenty of time for the suspect to get reacclimated to his normal life, to consult with friends and counsel, and to shake off any residual coercive effects of his prior custody." Id. The court recognized the clarity and certainty that result from Edwards and stated that "[confessions obtained after a 2-week break in custody and a waiver of Miranda rights are most unlikely to be compelled, and hence are unreasonably excluded." Id. at 111.
A.
¶ 27. The State argues that we should adopt the rule of Shatzer because it strikes a reasonable balance between the competing interests, preserving the protections of Edwards, and providing predictability for police officers. Edler argues that Edwards would normally bar further interrogation of a defendant after he had invoked his right to counsel and that the subsequent *15 interrogation of Edler was in violation of Edwards. He further argues that the Shatzer rule constricts the rights of defendants who have invoked their right to counsel. Edler urges this court to extend the protection provided in Wisconsin under Article 1, Section 8 of the Wisconsin Constitution beyond that provided by the United States Supreme Court in Shatzer. He suggests that subsequent custodial interrogation be permitted only if the suspect's attorney is present or if the suspect initiates further communication. In the alternative, he suggests a totality of the circumstances test to determine whether a break in custody is sufficient.
¶ 28. We adopt the 14-day rule of Shatzer. The break in custody was more than 14 days, and therefore, we hold that interrogating Edler after a 19-day break in custody did not itself violate Edwards. We agree with the court in Shatzer that predictability is important when creating prophylactic rules so police have clear guidance on what they can do and when.[10] See Shatzer, 559 U.S. at 110. We also agree that setting the two-week rule spares courts the inquiry of whether a suspect being asked to waive Miranda rights has ever asserted a Miranda right to counsel at an earlier date. Id. at 111-12.
¶ 29. This holding is consistent with the fact that we often interpret both the United States and Wisconsin constitutions the same way. See, e.g., State v. Jennings, 2002 WI 44, 252 Wis. 2d 228, 647 N.W2d 142. *16 There are exceptions to this rule. For example, in Knapp, this court looked to the Wisconsin Constitution to provide protection beyond that described by the United States Supreme Court. 285 Wis. 2d 86. In Knapp, a police officer testified that he had intentionally failed to provide Miranda warnings to a suspect so as to "keep the lines of communication open." Id., ¶¶ 13-14. The police officer acknowledged that he was aware that the suspect was attempting to contact counsel before the police brought the suspect in for custodial interrogation. Id., ¶ 14. Additionally, "the State ha[d] conceded that the physical evidence was seized as a direct result of an intentional Miranda violation." Id., ¶ 20. This court held that "the exclusionary rule bars physical fruits obtained from a deliberate Miranda violation under Article I, Section 8." Id., ¶ 73 (footnote omitted).
¶ 30. The case at hand does not present the same kind of constitutional issues as the intentional violation of Miranda in Knapp. We decline to extend the meaning of Wisconsin Constitution Article I, Section 8 in this situation so as to provide different protection than the Fifth Amendment to the United States Constitution.
¶ 31. Because we decline to provide different protection, we apply the 14-day break-in-custody rule of Shatzer. The parties agree that Edler was outside of custody for 19 days. Therefore, Shatzer was complied with here, and the statements cannot be suppressed on the grounds that Edler's March 30 invocation barred the interrogation on April 20.
B.
¶ 32. Even if under Shatzer enough time passed since Edler invoked his Miranda right to counsel such that his subsequent interrogation did not violate the *17 Edwards presumption, we must determine whether Edler's statement in the police car was an unequivocal, unambiguous invocation of the right to counsel such that the subsequent waiver at the station was invalid under Edwards.[11]
¶ 33. As noted above, Edwards creates a presumption that unless a suspect either "initiates further communication, exchanges, or conversations," or is provided with an attorney, any waiver made after a valid invocation of the right to counsel is invalid. Edwards, 451 U.S. at 484-85. "The legal sufficiency of a defendant's invocation of the right to counsel during a custodial interrogation is determined by the application of a constitutional standard to historical facts." Jennings, 252 Wis. 2d 228, ¶ 25. This court measures independently "the historical facts against a uniform constitutional standard, benefiting from, but not deferring to, the circuit court's decision." Id. (citations omitted).
¶ 34. In Davis v. United States, 512 U.S. 452 (1994), the United States Supreme Court established the test of whether a statement invoked the right to *18 counsel as follows: "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning." Id. at 459. The test adopted was an objective one: "Although a suspect need not 'speak with the discrimination of an Oxford don,' he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Id. (internal citation omitted). This court adopted the United States Supreme Court's test in Jennings, 252 Wis. 2d 228, ¶¶ 30, 36. Under the objective test, we must examine the circumstances surrounding the request.[12]
¶ 35. The relevant circumstances support the holding that Elder's statement was an unequivocal, unambiguous request for counsel. Urban had interrogated Edler on March 30, at which time Edler had requested an attorney on the arsons, stating, "From this point on, I'd like a lawyer here," and the request had *19 been complied with. Urban had been present on March 31 and tried to ask Edler about the arsons, to which Edler responded, "I honestly don't have anything to say about that." Urban had talked to Edler's father, and Edler's father had encouraged Edler to be honest with the detectives. At the time Edler invoked his right to counsel he had been arrested, and no one disputes that the word "this" related to the forthcoming interrogation. Urban knew Edler had been charged with burglary and had an attorney on that charge. An officer in Urban's position would have known that Edler had on previous occasions requested counsel to deal with this matter, which would make the officer more likely to understand that Edler was asking for his attorney again. In light of the circumstances, Edler's statement, "can my attorney be present for this," was sufficiently clear to a reasonable officer in Urban's position to understand the statement to be a request for an attorney.
¶ 36. Regardless of the surrounding circumstances, including Edler's previous experience with Detective Urban, we are satisfied that Edler's statement, "can my attorney be present for this," constituted an unambiguous, unequivocal invocation. Our holding is consistent with the approaches of other courts that have looked at similar statements. See, e.g., United States v. Lee, 413 F.3d 622 (7th Cir. 2005) (holding "can I have a lawyer" was a valid invocation and that police should have ended the interrogation unless they clarified the suspect's statement); United States v. Wysinger, 683 F.3d 784 (7th Cir. 2012) (citing its decision in Lee and reiterating that the phrase "can I have a lawyer" is an unequivocal, unambiguous request for counsel); State v. Dumas, 750 A.2d 420 (R.I. 2000) (holding that the phrase "can I get a lawyer" amounted to a colloquial request); Taylor v. State, 553 S.E.2d 598 (Ga. 2001) *20 (holding that the phrase "can I have a lawyer present when I do that," when made in response to the police's request that a suspect tell her side of the story, was an unequivocal, unambiguous request for an attorney); Commonwealth v. Hilliard, 613 S.E.2d 579 (Va. 2005) (holding that "can I get a lawyer in here? ... I already have a lawyer," in the circumstances, was an unequivocal, unambiguous request for an attorney).
¶ 37. For the reasons stated above, we hold that Edler's statement was an unequivocal, unambiguous request for counsel. There is no indication that after Edler's unequivocal, unambiguous request that Edler initiated further communications with Urban to indicate a valid waiver under Edwards. Therefore, any statements made by Edler after he requested his attorney in the car on the way to the sheriffs department must be suppressed.
IV CONCLUSION
¶ 38. We first examine Edler's March 30 invocation in light of the recent United States Supreme Court case Shatzer. In Shatzer the United States Supreme Court examined the presumption in Edwards, that after a suspect validly invokes the right to counsel, any subsequent waiver is invalid unless an attorney is present or the suspect "initiates further communication, exchanges, or conversations with the police." Edwards, 451 U.S. at 484-85. The Court in Shatzer explained that the Edwards presumption ends when the suspect has been outside police custody for 14 days. Shatzer, 559 U.S. at 110. Edler asks this court not to adopt Shatzer and instead interpret the Wisconsin Constitution to require a permanent bar on subsequent interrogation, or in the alternative, adopt a different *21 test. We see no need in this case to interpret the Wisconsin Constitution to provide different protection than that provided by the United States Supreme Court's interpretation of the United States Constitution. We therefore adopt the rule created in Shatzer and, because 19 days had passed between when Edler was released from custody and when he was reinterrogated, the March 30 invocation does not bar the interrogation on April 20.
¶ 39. A separate basis for suppressing the statements may exist even if the Edwards presumption no longer applied. If Edler's statement in the police car on April 20 was an unequivocal, unambiguous invocation of the right to counsel, the Edwards presumption would begin again. Given the circumstances surrounding the invocation and the understanding that statements beginning with the word "can" often constitute a request, we hold that Edler's statement, "can my attorney be present for this," was a valid invocation of the right to counsel. The invocation re-starts the Edwards presumption, barring Edler's waiver of rights later that day because Edler was not provided with counsel and did not "initiate[] further communication, exchanges, or conversations with the police." After Edler's request for an attorney, police should have ceased questioning him. Because they did not, Edler's statements made after that request must be suppressed. His request was an unequivocal, unambiguous invocation of his right to counsel.
By the Court.— Affirmed and cause remanded.
¶ 40. MICHAEL J. GABLEMAN, J., did not participate.

 All references to the Wisconsin Statutes are to the 2009-10 version.

 The certified questions are as follows:
1. [Wlhether Wisconsin should follow Shatzer or rely on the Wisconsin Constitution [art. I, § 8] as the Wisconsin Supreme Court has done with Fifth Amendment issues on other occasions.
2. When the defendant asked, in the squad car on the way to the second interrogation, "can my attorney he present for this?" did he unambiguously invoke his right to counsel?
3. If the statement is declared to be ambiguous, then we ask that the supreme court resolve a third issue. Does it make a difference whether the ambiguous statement was made before Miranda warnings were given as opposed to afterwards?
We answer the first two questions. Because we hold that the statement by Edler was an unequivocal, unambiguous request for counsel, we need not and do not address whether the standard for a statement pre-Miranda is the same as that articulated in State v. Jennings, 2002 WI 44, 252 Wis. 2d 228, 647 N.W2d 142, and Davis v. United States, 512 U.S. 452 (1994), or whether the standard should differ when a defendant has not recently been told of his or her constitutional rights.

 Miranda v. Arizona, 384 U.S. 436 (1966).

 The interview was video-recorded.

 Toward the end of the interview, Edler appeared to have a panic attack and then vomited. Urban did not question Edler after that occurred.

 Edler also moved to suppress the April 18, 2011, statements recorded on the covert wire on Sixth Amendment grounds. The circuit court denied the motion to suppress the statements on April 18, dismissing the use of the Sixth Amendment in this case, stating that "Sixth Amendment rights do not attach until the State commences adversary proceedings," citing *9 McNeil v. Wisconsin, 501 U.S. 171 (1991). The circuit court explained why the exceptions to this rule were not satisfied here. Edler did not appeal that order.

 See, e.g., Michigan v. Harvey, 494 U.S. 344, 351 (1990) (a Sixth Amendment case describing prophylactic rules as "measures designed to ensure that constitutional rights are protected.")
Recently the majority in Shatzer emphasized that Edwards and Miranda were judicially prescribed prophylactic rules and that the Court had an obligation to justify any expansion. Maryland v. Shatzer, 559 U.S. 98, 103-05 (2010). The concurrence by Justice Stevens made it clear that the Shatzer rule was based on the Fifth Amendment and argued that the majority "demeans Edwards as a 'second layer' of 'judicially prescribed prophylaxis.'" Id. at 120 (Stevens, J., concurring).

 The United States Supreme Court in Shatzer held that being released back into general population constituted a break in Miranda custody, stating: "Without minimizing the harsh realities of incarceration, we think lawful imprisonment imposed upon conviction of a crime does not create the coercive pressures identified in Miranda." Shatzer, 559 U.S. at 113.

 The Edwards majority does not describe the holding as creating a prophylactic rule. It holds that a constitutional violation occurred, stating, "Because the use of [Edwards'] confession against him at his trial violated his rights under the Fifth and Fourteenth Amendments as construed in Miranda v. Arizona, we reverse the judgment of the Arizona Supreme Court." Edwards v. Arizona, 451 U.S. 477, 480 (1981) (emphasis added) (internal citation omitted). The Edwards rule has been subsequently characterized as a prophylactic rule. See Shatzer, 559 U.S. at 105 (citing Montejo v. Louisiana, 556 U.S. 778, 787 (2009); Michigan v. Harvey, 494 U.S. 344, 349 (1990); Solem v. Stumes, 465 U.S. 638, 644, n.4 (1984)).

 We recognize that the Shatzer majority calls the rule "prophylactic," implying that it is not mandated by the United States Constitution. In this case, Edler argues that this court should interpret the Wisconsin Constitution to prevent this type of behavior by police. Similarly, the court of appeals certified to us the question of whether to extend the Wisconsin Constitution to provide different protection than that in Shatzer. For these reasons, we discuss the scope of the Wisconsin Constitution.

 Generally, a defendant must be subjected to custodial interrogation in order to get the protections of Miranda and Edwards. See State v. Lonkoski, 2013 WI 30, ¶ 41, 346 Wis. 2d 523, 828 N.W.2d 552. In State v. Hambly, 2008 WI 10, ¶ 3, 307 Wis. 2d 98, 745 N.W2d 48, we held that a suspect who had been arrested and was not yet being interrogated could invoke his Miranda right to counsel. In that case, this court split on the issue of whether interrogation must be "imminent or impending," with three justices deciding that it must be "imminent or impending" and three justices concluding that the question need not be answered. Id., ¶ 33. We need not answer that question here because the State conceded that Edler had a right to invoke his Miranda rights during the police transport when the attempted interrogation was forthcoming.

 We note that by using the objective test of Davis and Jennings to determine whether the statement was an unambiguous, unequivocal invocation of the right to counsel, we are not answering the third question certified by the court of appeals. Recall our earlier explanation:
Because we hold that the statement by Edler was an unequivocal, unambiguous request for counsel, we need not and do not address whether the standard for a statement pre-Miranda is the same as that articulated in State v. Jennings, 2002 WI44, 252 Wis. 2d 228, 647 N.W2d 142 and Davis v. United States, 512 U.S. 452 (1994), or if the standard should differ when a defendant has not recently been told of his or her constitutional rights.
Supra, ¶ 2 n.2.