COURT OF APPEALS
DECISION
DATED AND FILED

December 15, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP865-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF640

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

ROBBY R. WALENTOWSKI,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Kenosha County: BRUCE E. SCHROEDER, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Reilly, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Robby R. Walentowski appeals a judgment of conviction, entered upon his guilty pleas, for five counts of possession of child pornography. He argues the circuit court erred by denying his motion to suppress evidence obtained from a search of his cellular telephone, under circumstances where the phone was confiscated during an unlawful seizure of his person under *Bailey v. United States*, 568 U.S. 186 (2013). Like the circuit court, we conclude the inevitable discovery doctrine applies because police had already obtained a search warrant that authorized police to confiscate any "cellular/digital telephones" and the State established by a preponderance of the evidence that, but for the illegal seizure a short distance from the home, Walentowski's iPhone would have been discovered and seized when he arrived at the residence. Accordingly, we affirm.

## BACKGROUND

¶2     On June 3, 2019, the Kenosha Police Department received a tip from the National Center of Missing and Exploited Children that a Yahoo email address belonging to Walentowski had sent 136 images of child pornography. Based on that information, police obtained a search warrant the following day. A search of Walentowski's residence in Kenosha yielded no suspected child pornography. However, police confiscated Walentowski's iPhone during a stop of his vehicle moments before officers waiting at Walentowski's residence executed the search warrant. The stop occurred a few blocks from his residence, when Walentowski was returning from his workplace in Illinois.

¶3     A forensic search of the iPhone revealed images that formed the basis for the ten counts of possession of child pornography charged in this case. After the criminal proceeding commenced, police obtained search warrants for

Walentowski's Yahoo and Google email accounts and discovered that suspected child pornography—including the ten images that were referred for prosecution—had been sent from and received by those accounts, respectively.

¶4 Walentowski filed a motion to suppress, asserting that the evidence recovered from his iPhone was obtained as a result of an unlawful seizure under *Bailey*. Further facts regarding the search were developed at an evidentiary hearing on the suppression motion, at which detective Peter Deates and the defendant's father testified. At the conclusion of the hearing, the circuit court concluded that although the seizure appeared to have violated *Bailey*, the evidence was nonetheless admissible pursuant to the "inevitable discovery" doctrine. The court reasoned that police had a warrant to seize the phone, and that would have inevitably occurred if Walentowski had not been stopped en route to his residence.

¶5 At the circuit court's invitation, Walentowski sought reconsideration. During a hearing on that motion, the court cast doubt on its earlier intimation that there had been a *Bailey* violation, but nonetheless reaffirmed its conclusion that even if such a violation occurred the inevitable discovery doctrine applied.[1] Walentowski then reached a plea agreement with the State and was convicted of five counts of possession of child pornography, with the remaining five counts dismissed and read in. He now appeals the denial of his suppression motion.[2]

---

[1] In response to a subsequent recusal motion, the circuit court provided further explanation of its thinking regarding the potential applicability of *Bailey v. United States*, 568 U.S. 186 (2013), including by remarking that it was relying on defense counsel's representation of that case and opining that the search of Walentowski's iPhone involved a "clearcut" application of the inevitable discovery doctrine.

[2] *See* WIS. STAT. § 971.31(10) (2019-20).

# DISCUSSION[3]

¶6      Appellate review of an order granting or denying a suppression motion presents a question of constitutional fact. *State v. Abbott*, 2020 WI App 25, ¶10, 392 Wis. 2d 232, 944 N.W.2d 8. We accept the circuit court's findings of fact unless they are clearly erroneous, but the application of constitutional principles to those facts is a question of law that we determine de novo. *State v. Jackson*, 2016 WI 56, ¶45, 369 Wis. 2d 673, 882 N.W.2d 422.

¶7      Walentowski posits that the facts here are indistinguishable from those in *Bailey*, and therefore the evidence obtained from the search of his iPhone, as well as all derivative evidence, must be suppressed. In *Bailey*, the Supreme Court considered the scope of the rule announced in *Michigan v. Summers*, 452 U.S. 692, 705 (1981), that, as a general matter, "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Bailey* made clear that this "categorical authority to detain" does not extend beyond the "immediate vicinity of the premises to be searched." *Bailey*, 568 U.S. at 197, 201.

---

[3] As an initial matter, both parties advance forfeiture arguments. The State argues that Walentowski, who on appeal appears to regard the Yahoo and Google warrants as derivative evidence also subject to suppression, has forfeited that argument by failing to raise it in the circuit court. Walentowski argues the State has forfeited its inevitable discovery argument, claiming the State "failed to present evidence of inevitable discovery, and further failed to raise this issue at the [suppression] hearing."

No forfeiture occurred in this case, and even if it had, the circumstances of this case would justify disregarding it. *See State v. Counihan*, 2020 WI 12, ¶27, 390 Wis. 2d 172, 938 N.W.2d 530. The State's arguments are based on the testimony developed at the hearing, regardless of whether it was the circuit court to first suggest the applicability of the inevitable discovery doctrine. Moreover, even if we assume the Yahoo and Google warrants were derivative of the iPhone search, for the reasons explained herein the exclusionary rule is inapplicable to the evidence obtained from the iPhone.

¶8 The State concedes a ***Bailey*** violation occurred,[4] but nonetheless argues that the circuit court properly declined to apply the exclusionary rule to the evidence obtained as a result of Walentowski's illegal detention a few blocks away from his residence. Based on the testimony from the suppression hearing, the State argues the court reasonably concluded that, if Walentowski had not been stopped by police, he would have arrived at his house, where he would have been detained. At that point, the State contends that law enforcement would have searched Walentowski and recovered the iPhone because the search warrant specifically authorized police to seize cellular telephones. In the State's view, the existence of the search warrant authorizing police to confiscate the iPhone made the seizure of the device inevitable under the facts here.

¶9 Articulated in ***Nix v. Williams***, 467 U.S. 431 (1984), the inevitable discovery doctrine provides as follows: "If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means … then the deterrence rationale [for police misconduct] has so little basis that the evidence should be received." ***Id.*** at 444. There is no requirement that the State demonstrate active pursuit of an alternative

---

[4] Despite the State's concession, it is unclear whether the facts here constitute a violation of ***Bailey v. United States***, 568 U.S. 186 (2013). The search warrant in ***Bailey*** was for a location only, whereas here the warrant, in addition to authorizing a search of Walentowski's residence, was directed to "*[t]he person of*, and all Cellular Phones/Electronic Devices, owned, utilized, and possessed, including the constructive possession by: Robby R. Welentowski [sic] – 11/01/1982." (Emphasis added.) Moreover, police obviously believed the warrant allowed them to detain Walentowski, as Deates testified at the suppression hearing that he construed the warrant's provisions to require Walentowski to provide his fingerprint if necessary to unlock the iPhone.

Nonetheless, the State's "does not contest"—at least, not before this court—Walentowski's claim that a ***Bailey*** violation occurred. We accept the State's concession and therefore decide this appeal on the arguments the parties present. *See **Industrial Risk Insurers v. American Eng'g Testing, Inc.***, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 (noting we will not abandon our neutrality to develop arguments for a party).

line of investigation or the absence of bad faith. *Jackson*, 369 Wis. 2d 673, ¶¶65-66, 70.

¶10    We agree with the State that, under the circumstances here, Walentowski's iPhone would have inevitably been seized and searched. At the suppression hearing, detective Deates testified that after obtaining the search warrant, police performed surveillance on Walentowski's residence to determine an opportune time to execute the search. The day the warrant was executed, Deates observed Walentowski depart from his residence in the morning. Police followed Walentowski to his place of employment in Illinois and decided to execute the search warrant at the residence when Walentowski finished work and returned to Kenosha.

¶11    Police stopped Walentowski when he was a few blocks away from his house "to make sure that we could have more control over the situation."[5] Deates testified that Walentowski was headed toward the house when he was stopped. Deates approached Walentowski, who surrendered his phone. Deates provided Walentowski with a copy of the warrant. Walentowski declined to provide his facial identification or fingerprints to unlock the iPhone, and Deates decided not to press the issue. The iPhone was included on the search warrant return.

¶12    Nearly the same sequence of events would have occurred but for the illegal seizure. Walentowski does not dispute that, if he had not been stopped and

---

[5] The exact distance between the location where Walentowski was stopped and his residence was disputed. Testimony at the hearing suggested the stop might have occurred as few as two blocks away or as many as five blocks away. This factual dispute, which the circuit court did not explicitly resolve, is immaterial to our determination.

had returned to his residence, he could have been searched pursuant to the terms of the warrant. Officers clearly had probable cause to detain Walentowski while he was present at his residence and to search him for and seize any "cellular/digital telephones," which were items specifically named in the warrant. *See **Ybarra v. Illinois***, 444 U.S. 85, 91 (1979) ("Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person."); *see also **Bailey***, 568 U.S. at 196 ("If Bailey had rushed back to his apartment, the police could have apprehended and detained him under *Summers*.").

¶13     Walentowski responds that the notion he would have returned home is speculative and cannot form the basis for application of the inevitable discovery doctrine. He claims that "it was not even proven at the evidentiary hearing that Walentowski was … going home" at the time he was seized. The circuit court's finding of fact that Walentowski was returning to his home from his workplace and would have arrived there but for the illegal seizure was a reasonable inference from the hearing testimony and was therefore not clearly erroneous. The circuit court clearly regarded that to have been the most likely outcome, even if it in passing addressed an alternative scenario in which Walentowski decided to flee the scene upon arriving home and seeing law enforcement waiting.[6]

---

[6] Among other articulations of its rationale, the circuit court remarked, "I certainly can't presume that he would have driven off, and even if he did, that's just flight from—that does nothing, to me, to justify he should be protected from the search because he was going to flee from the scene, the [site] where the acquisition of evidence was occurring."

¶14 Walentowski also argues that not ordering suppression under the facts of this case would render *Bailey* a "complete nullity."[7] But the inevitable discovery doctrine assumes a degree of police misconduct. *See Jackson*, 369 Wis. 2d 673, ¶¶46-47. Courts exclude evidence only when the benefits of deterring that misconduct "outweigh the substantial costs to the truth-seeking and law enforcement objectives of the criminal justice system." *Id.*, ¶46 (quoting *State v. Dearborn*, 2010 WI 84, ¶38, 327 Wis. 2d 252, 786 N.W.2d 97). Under the circumstances here—i.e., because police officers had already obtained a search warrant allowing for the seizure of cellular telephones and the iPhone would inevitably have been seized and searched once Walentowski arrived back at his residence—applying the exclusionary rule would provide only marginal deterrence, which is not appropriate given the substantial societal costs at stake. *See Herring v. United States*, 555 U.S. 135, 141 (2009).

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[7] Walentowski summarily concludes, without analysis, that failing to order suppression under the circumstances of this case would eviscerate *Bailey*. The *Bailey* court, however, did not address inevitable discovery, and that case involved facts that deviate from those here in ways that may significantly affect the inevitable discovery calculus. For example, in *Bailey*, the defendant was stopped after he had left the premises to be searched and was approximately one mile away. *Bailey*, 568 U.S. at 190. Additionally, the item seized (a ring of keys) was not named in the search warrant for the premises, which authorized the search only for a handgun. *Id.*