COURT OF APPEALS
DECISION
DATED AND FILED

July 5, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP678-CR**

Cir. Ct. No. 2017CF3588

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MICHAEL K. BROOKS,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: MARK A. SANDERS, Judge. *Affirmed.*

Before Brash, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1　　PER CURIAM.  Michael K. Brooks appeals a judgment, entered after a bench trial, convicting him of first-degree sexual assault of a child under thirteen years of age.  He maintains that the circuit court erred when it denied his motion to suppress a portion of his custodial statement because, he claims, the custodial interrogation continued after he invoked his right to counsel.  We conclude that Brooks did not unequivocally invoke his right to counsel for purposes of a custodial interrogation when he said that he wanted to talk to a lawyer in connection with the execution of a search warrant for his DNA.  We further conclude that, even assuming that the circuit court erroneously denied Brooks's suppression motion, any error was harmless beyond a reasonable doubt.  We therefore affirm.

## Background

¶2　　On August 3, 2017, Detective Steve Wells questioned Brooks while he was in custody following an allegation that on July 23, 2017, he sexually assaulted a nine-year-old girl, R.G., and her six-year-old sister, N.F.　The interrogation was audio-recorded and took place in two parts that were separated by a break of four unrecorded minutes.  The State subsequently charged Brooks with two counts of sexual assault of a child younger than thirteen years old.  Brooks, who represented himself in the circuit court proceedings, moved to suppress the second part of the custodial interview on the ground that it continued after he had invoked his right to counsel.  The circuit court conducted a hearing at which Wells was the sole witness.  We take the facts regarding the custodial interview from the circuit court's findings and the audio recording in the record.

¶3 At the outset of the interview, Wells orally provided Brooks with the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966).[1] Brooks responded that he would talk. During the first part of the interview, Wells showed Brooks a portion of a surveillance video recorded from a Milwaukee building on the 2400 block of West Mitchell Street late in the evening of July 23, 2017. Brooks acknowledged that he was the adult male seen on the video walking with two little girls. Brooks also admitted to going onto the roof of a building in the area with the two girls, but he said that no sexual acts took place.

¶4 Approximately forty minutes into the interview, Wells served Brooks with a search warrant for a buccal swab to collect his DNA. Brooks reviewed the warrant, and Wells asked Brooks whether he wanted Wells to read the warrant aloud. Brooks said he knew that Wells was "doing [his] job," then added: "I know I'll be going to court anyway man so I prefer, I prefer to just talk to my attorney about all this." After a pause, Wells stated: "Time is now 11:25 a.m."

¶5 Brooks next inquired about the identity of the court official who signed the warrant, complained that he was submitting to the buccal swab "under duress," and continued to ask whether he could have a lawyer present for the procedure. Wells answered "no," and explained that Brooks was compelled by the warrant to permit the swab.[2] Brooks ultimately cooperated with the procedure.

---

[1] Before questioning a suspect in custody, the police must inform the person of, *inter alia*, the right to remain silent, the fact that any statements made may be used against the person in a court of law, the right to have an attorney present during questioning, and the right to have an attorney appointed if the person cannot afford one. *See Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966).

[2] Brooks did not suggest in the circuit court proceedings and does not suggest now that he was entitled to have counsel present when police swabbed him pursuant to the warrant.

¶6      Wells continued to record his interaction with Brooks throughout the execution of the search warrant. While Wells was completing the swabbing process, Brooks said that he was "just trying to talk to [Wells]," but the detective said that the conversation was over because Brooks had requested a lawyer. After collecting the buccal swab, Wells stated that the time was 11:30 a.m., and then he turned off the recording device.

¶7      Wells testified at the suppression hearing that after he stopped recording, he prepared to leave the interview room, but Brooks "really was begging [Wells] to stay." Wells decided that he would do so.

¶8      Wells resumed recording, and he began this portion of the interview by stating: "the time is 11:34 a.m." Wells next said that Brooks "wanted to talk off the record but I explained to him that he asked for a lawyer and I don't talk to people after they ask for a lawyer[.] Mr. Brooks told me that he wanted to talk without a lawyer present. Is that true?" Brooks responded: "I will talk." Brooks also said that it was his idea to talk and that he had not been forced or threatened. He explained that he "wasn't sure after getting this warrant if [he] could have a lawyer present ... and that's what made [him] ask for a lawyer." Brooks next reiterated that he "want[ed] to continue [the] conversation" and did not want a lawyer present. During the next forty minutes, Brooks made statements describing his sexual contact with R.G. on a rooftop.

¶9      The circuit court found that Wells intended to terminate the interview at 11:25 a.m., execute the search warrant, and then leave the room because "Wells thought that [Brooks] was invoking his right to an attorney." Based on the recorded interview and Wells's testimony, however, the circuit court went on to find that Brooks had in fact expressed confusion about the search warrant procedure and a

4

preference to discuss the warrant with counsel. The circuit court further found that during the four minutes that the recording device was turned off, Brooks begged Wells to stay, and Wells eventually agreed.

¶10 The circuit court concluded that Brooks had not unequivocally invoked his right to counsel for purposes of a custodial interrogation. Therefore, although the detective had initially intended to stop questioning Brooks when he asked about an attorney, Wells was not required to terminate the interview or to take any other prophylactic step before continuing the interrogation. Accordingly, the circuit court denied the motion to suppress.[3]

¶11 The charges proceeded to a bench trial at which only the State presented evidence. R.G. testified and described how she and her sister N.F. followed Brooks to a rooftop on Mitchell Street where Brooks sexually assaulted R.G. A police officer testified that he collected the clothes that R.G. and N.F. were wearing when they encountered Brooks. The items included R.G.'s romper. A DNA analyst testified that she found sperm on the romper and developed the DNA profile of the male who deposited that sperm. The analyst also developed Brooks's DNA profile from his buccal swabs, and she determined that Brooks's DNA profile matched the profile of the male who deposited sperm on R.G.'s romper. The analyst then testified that Brooks was the source of the DNA on the romper, and she explained that she was able to say so because his profile was sufficiently rare that

---

[3] The circuit court also found that even if Brooks had invoked his right to counsel during the swabbing procedure, he reinitiated the questioning within four minutes. The circuit court therefore again concluded that Brooks was not entitled to an order suppressing his ensuing statements. On appeal, the parties debate the validity of that analysis. Because we agree with the circuit court's conclusion that Brooks did not invoke his right to counsel, we see no need to discuss the circuit court's alternative basis for denying the suppression motion. *See **Barrows v. American Family Ins. Co.**, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

"you would have to go through approximately seven trillion plus people before you found that DNA profile again." Finally, the State presented the July 23, 2017, surveillance video of Brooks walking at night with two little girls, including one who was wearing a romper, and the audio recording of Brooks's custodial interview with Wells.

¶12 At the conclusion of the bench trial, the circuit court found Brooks guilty of sexually assaulting R.G. in violation of WIS. STAT. § 948.02(1)(e) (2017-18).[4] Brooks appeals, challenging the order that denied his suppression motion.

## Discussion

¶13 Review of an order denying suppression of evidence presents a question of constitutional fact that we address using a two-step inquiry. *See State v. Delap*, 2018 WI 64, ¶¶26-27, 382 Wis. 2d 92, 913 N.W.2d 175. We uphold the circuit court's findings of historical fact unless they are clearly erroneous, and then we independently apply constitutional principles to those facts. *See id.*, ¶27.

¶14 Brooks contends that the circuit court should have suppressed a portion of his custodial statement on the ground that he made the statement after invoking his right to counsel. A suspect facing custodial interrogation has constitutional rights to counsel and to remain silent. *See State v. Abbott*, 2020 WI App 25, ¶30, 392 Wis. 2d 232, 944 N.W.2d 8. Pursuant to *Miranda*, the police must inform the suspect of those rights before conducting a custodial interrogation. *See*

---

[4] At the close of the evidence, Brooks moved to dismiss the charge that he sexually assaulted N.F., and the circuit court granted his motion, finding that the State had not presented any evidence to support the charge.

All subsequent references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

***Abbott***, 392 Wis. 2d 232, ¶30. Incriminating statements obtained in violation of ***Miranda*** normally must be suppressed. *See **State v. Dobbs***, 2020 WI 64, ¶52, 392 Wis. 2d 505, 945 N.W.2d 609. A suspect who has received proper warnings, however, may validly waive the rights to counsel and to remain silent and choose to answer questions. *See **Abbott***, 392 Wis. 2d 232, ¶¶30-31.

¶15    Brooks does not dispute that at the outset of the custodial interview, he received the warnings required by ***Miranda***, nor does he dispute that he waived his rights and agreed to talk to Wells. Brooks contends, however, that he invoked his right to counsel while the interrogation was underway and that questioning therefore should have terminated.

¶16    "Among the most important conclusions in ***Miranda*** is that once an individual invokes the right to counsel, interrogation must cease." ***State v. Stevens***, 2012 WI 97, ¶48, 343 Wis. 2d 157, 822 N.W.2d 79. However, "[t]o invoke the right to counsel, a suspect must make an 'unambiguous and unequivocal request for counsel[.]'" ***Abbott***, 392 Wis. 2d 232, ¶32 (citation and one set of brackets omitted). Moreover, the right to counsel "that is the subject of ***Miranda*** ... requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police.*" ***State v. Coerper***, 199 Wis. 2d 216, 223, 544 N.W.2d 423 (1996) (citation omitted). A defendant may thus invoke the right to counsel for one purpose without also invoking it for other purposes. *See, e.g.*, ***Connecticut v. Barrett***, 479 U.S. 523, 529 (1987) (holding that the police are not required to cease asking questions orally when the suspect requests counsel only for the purposes of making a written statement).

¶17     We use an objective test to assess whether a suspect unequivocally invoked the right to counsel for purposes of a custodial interrogation. *See State v. Cummings*, 2014 WI 88, ¶50, 357 Wis. 2d 1, 850 N.W.2d 915. If the suspect's statement is subject to "reasonable competing inferences," then it is not unequivocal and therefore does not require the police to terminate the interrogation. *See id.*, ¶51 (citation omitted). Whether an inference is reasonable is a question of law. *State ex rel. McCaffrey v. Shanks*, 124 Wis. 2d 216, 235, 369 N.W.2d 743 (Ct. App. 1985).

¶18     Here, the circuit court found that Brooks did not make an unequivocal request for counsel in dealing with the custodial interrogation. *See Coerper*, 199 Wis. 2d at 223. The circuit court instead found that when Brooks said he "preferred to talk to [his] attorney about 'all of this,' 'all of this' referred to the context of that conversation," namely, the warrant for a buccal swab that Wells was in the process of executing. The circuit court further found that Brooks's statements and inquiries while Wells was conducting the swabbing process expressed Brooks's confusion about the warrant rather than a request for counsel to assist with questioning.

¶19     Brooks relies on the following portion of his interaction with Wells to demonstrate an unequivocal request for counsel during the interrogation:[5]

> At 44:21, the defendant begins to discuss whether or not he should have a lawyer in connection with the search warrant being executed. The defendant says, I don't have to get a lawyer to do this even? Detective Wells says no. The defendant responds, can I get a lawyer to do this. The response is no. The defendant says, I can't get a lawyer to be present when you swab me? The response is no, no, I can do this now.

---

[5] We reproduce the discussion between Brooks and Wells as set forth in the circuit court's decision from the bench resolving the suppression motion. Brooks does not dispute the accuracy of the circuit court's review.

44:33, I'm saying can I have a lawyer present? Detective Wells, no.

Defendant, Not at all?

The response is, not for this, no. If it was consensual then you could have a lawyer.

Brooks argues: "Mr. Brooks' 'Not at all?' would have been seen by a reasonable police officer as expanding the need for a lawyer beyond simply watching the DNA collection."

¶20     The question, however, is whether Brooks's words were unequivocal. They were not. Brooks's question simply did not constitute a clear request to have an attorney present for custodial questioning. Moreover, as the circuit court found, the question was part of the discussion that Brooks was having with Wells about whether a lawyer was required or could be made available for the search warrant procedure. Brooks's vague follow-up inquiry did not unambiguously redirect that discussion. Accordingly, the circuit court's findings regarding the meaning of this inquiry and Brooks's surrounding statements constitute reasonable inferences that the circuit court properly could draw from the evidence presented. *See Shanks*, 124 Wis. 2d at 235.

¶21     Brooks next argues that, because Wells initially believed that Brooks had "asked for a lawyer," we must conclude that Brooks unequivocally invoked his right to counsel for purposes of an interrogation. A contrary conclusion, Brooks asserts, requires a determination that "Wells's understanding was unreasonable." We disagree. A suspect's statements regarding an attorney are equivocal, and therefore insufficient to require the police to terminate an interrogation, if those statements are subject to reasonable competing inferences. *See Cummings*, 357 Wis. 2d 1, ¶51. That is the situation here. Brooks's remarks may have allowed

more than one reasonable inference, but the record clearly supports a conclusion that Brooks's references to an attorney were efforts to determine whether he could have counsel present when Wells executed the search warrant for a buccal swab. Because such a conclusion is objectively reasonable, Brooks's remarks were not unequivocal statements requiring Wells to end the interrogation. *See id.*

¶22 In sum, we are satisfied that Brooks did not unequivocally invoke his right to counsel for purposes of the custodial interrogation. Wells was therefore not required to stop questioning Brooks. Accordingly, the circuit court properly denied Brooks's suppression motion.

¶23 For the sake of completeness, we also observe that, were we to conclude that the circuit court erred by denying the suppression motion, we would nonetheless affirm because any error was harmless beyond a reasonable doubt. *See Dobbs*, 392 Wis. 2d 505, ¶52 (holding that "[i]ncriminating statements made in violation of *Miranda* must be suppressed … unless the admission of the statements was harmless error"). An error is harmless if "it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *State v. Harvey*, 2002 WI 93, ¶44, 254 Wis. 2d 442, 647 N.W.2d 189 (citations and some quotation marks omitted). That test is satisfied "if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" *Dobbs*, 392 Wis. 2d 505, ¶68 (citation omitted).

¶24 Here, of course, the case was not tried to a jury but to the circuit court, which explained its verdict on the record.[6] *See* WIS. STAT. § 972.02(3). The explanation demonstrates that the circuit court would have found Brooks guilty even if the challenged custodial statements had been suppressed.

¶25 The circuit court began by finding that R.G. was credible, and the circuit court thoughtfully explained the basis for that finding, noting that it turned not only on the specifics of her allegations but also on the way in which she responded to questioning and her overall demeanor on the stand. The circuit court went on to conclude that R.G.'s testimony, in which she identified Brooks and described how he sexually assaulted her on a rooftop, "by itself would be sufficient" to prove that Brooks had sexual contact with R.G. This conclusion was legally unimpeachable. The law is clear that a fact finder is entitled to find a defendant guilty based on the victim's testimony alone. *See State v. Sharp*, 180 Wis. 2d 640, 659, 511 N.W.2d 316 (Ct. App. 1993). To be sure, the circuit court also deemed Brooks's custodial statement believable, but the circuit court's explanation of its verdict demonstrates that Brooks's statement was not necessary to prove him guilty. R.G.'s testimony was enough.

¶26 Moreover, the State's evidence also included a July 23, 2017 surveillance video that showed Brooks walking at night on West Mitchell Street with R.G. and her sister; and the State presented expert testimony that Brooks's sperm was on the romper that R.G. was wearing when she encountered Brooks that night. We agree with the State that the totality of the indisputably admissible

---

[6] When, as here, a case is tried to the court, the harmless error analysis is arguably subject to a less rigorous standard than is set forth in *State v. Dobbs*, 2020 WI 64, ¶68, 392 Wis. 2d 505, 945 N.W.2d 609. *See State v. Harling*, 44 Wis. 2d 266, 278, 170 N.W.2d 720 (1969). Because any error in admitting Brooks's statement was harmless under *Dobbs*, we do not consider whether any erroneous admission would have been harmless under a less exacting analysis.

evidence of Brooks's guilt was so powerful that any error in admitting his challenged confession was harmless beyond a reasonable doubt and did not contribute to the circuit court's finding that he was guilty of first-degree sexual assault of a child. For all the foregoing reasons, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.